### Mary C. Sullings *vs.* Andrew Richmond & another.

It is no answer to the claim of a widow to a distributive share in the personal estate left by her husband, to show that she made an ante-nuptial agreement with him, by which she covenanted to accept certain provisions therein undertaken to be made for her by him, in the place of and as a substitute for dower in his estate, and as a bar and estoppel to any and every other claim by her upon his estate.

APPEAL from a decision of the judge of probate, disallowing, *pro forma*, the petition of the widow of Hervey Sullings, deceased, claiming her distributive share in the personal estate left by him, and waiving the provisions of his will.

At the hearing in this court, before *Metcalf*, J., it appeared that the petitioner was married to Hervey Sullings in July 1844, and that he died in December 1859, leaving real estate of the

value of $24,000, and personal estate of the value of $39,000 and it was admitted that she would be entitled to the share, as claimed by her, but for an ante-nuptial agreement between the parties, the material portions of which are copied in the margin.*

* " Whereas a contract of marriage, hereafter to be had and solemnized, has been entered into between Hervey Sullings of New Bedford, in the county of Bristol, clerk, and Mary C. Marvel of Fall River, in said county of Bristol, single woman, daughter of Bennanuel Marvel late of Swansey, in said county, deceased, and Ruhannah his wife; and whereas it is the desire and purpose of said Sullings, in the event of said marriage and his decease subsequent thereto, and said Mary surviving him, that meet and suitable provision should be made for her comfortable maintenance, as far as may be beyond the casualties and contingencies to which men and business are exposed: and whereas it is the desire of said Mary that such provision should be in the place of, a substitute for, and a legal and equitable bar to all right or claim of dower or thirds on the part of said Mary in the estate of said Sullings, in the event of said marriage and her becoming his widow:

" Now therefore, to the end that these objects may be attained and accomplished, this instrument, made and entered into this twentieth day of July in the year of our Lord one thousand eight hundred and forty-four, by and between the said Hervey Sullings of the first part, and the said Mary C. Marvel of the second part, witnesseth: That the said Sullings on his part undertakes, covenants and agrees with the said Mary, to procure as soon as is practicable fifty shares of the capital stock of one or more of the banks in the town of New Bedford, and immediately thereafter to convey said fifty shares of said capital stock to James B. Congdon of said New Bedford, Esquire, to be by him held in trust, for the purposes following:

" First. To the use and for the sole benefit of him the said Sullings, during his natural life.

" Second. Should the said Sullings die in the lifetime of her the said Mary, then the said Congdon to hold the same for the use, profit and advantage of her the said Mary, so that she shall be entitled to receive, hold, enjoy and dispose of all the dividends, profits, proceeds and issues thereof, during the full period of her natural life.

" Thirdly After the decease of said Mary, to convey and transfer the same to the issue which may spring from the intermarriage aforesaid, if any, in equal proportions: and should no issue proceed from said marriage, then the said Congdon to convey the same to the said Sullings, if living, and, if not living, to his legal heirs, if he the said Sullings shall have died intestate; and otherwise, to convey and transfer the same to such person or persons as may be entitled thereto by any testamentary disposition which the said Sullings may legally make thereof.

The execution of this agreement was not denied by the petitioner, but the agreement was objected to as inoperative to bar her claim. It was contended, among other things, that the terms of the agreement were not complied with by Hervey Sullings during the marriage, and evidence was taken upon this question; but it became immaterial to the present case, by the decision. The case was reported for the determination of the whole court.

*T. D. Eliot & T. M. Stetson,* for the petitioner. 1. The antenuptial agreement, when fairly construed, does not undertake to bar her claim to a distributive share of the personal estate. Until *St.* 1854, *c.* 406, she had no title to such share, and had nothing to bar or release. Toller, 386. 2. But such an instrument could not operate to bar her present claim. No right can be barred till it accrues at common law. 1 Cruise Dig. (Greenl. ed.) tit. vii. *c.* 1, § 1. *Vernon's case,* 4 Co. 1. *Reed* v. *Tarbell,* 4 Met. 95. It could not bar dower, at common law. *Hastings* v. *Dickinson,* 7 Mass. 153. *Gibson* v. *Gibson,* 15 Mass. 111. This contract was a part of his estate, and descends to the legal distributees, of whom she is one. No executory covenant can be an estoppel to an action. Nor can it be used as a rebutter, to prevent circuity of action, unless the damages in the two

---

" And in the event of said marriage, and the continuance in life of the parties hereto for the period of five full years thereafter, the said Sullings hereby further covenants to pay to the said Congdon the sum of two hundred dollars *per annum,* so long as he the said Sullings and she the said Mary shall continue in life : to be held in trust as aforesaid, and to be used and finally disposed of in like manner as the bank stock aforesaid.

" And the said Mary C. Marvel, in contemplation of said marriage, hereafter to be had and solemnized, covenants and agrees to accept the provisions herein undertaken to be made by the said Hervey Sullings for her comfortable maintenance and support, when the same are duly and legally made, so as to become valid and obligatory, in the place of and as a substitute for dower or thirds in the estate of said Sullings, in the event of her marriage with him the said Sullings, and his decease, the said Mary surviving; and to be and constitute a bar and estoppel to any and every other claim by her made upon the estate of said Sullings, consequent upon said marriage, and her surviving him."

actions are shown to be commensurate, which is not the case here. See cases above cited.

*B. F. Thomas* (*W. W. Crapo* with him), for the respondents. 1. When the marriage between the parties took place, the agreement became valid and obligatory. The marriage was the mutual consideration. The contract could then have been enforced in equity by Mrs. Sullings, or the trustee. The provisions undertaken to be made were therefore " duly and legally made, so as to become valid and obligatory." *Vincent* v. *Spooner,* 2 Cush. 467, 474, 475. Atherley on Marriage Settlements, 512. Peachey on Marriage Settlements, 64–66. 2 Story on Eq., §§ 1368, 1414. *Elibank* v. *Montolieu,* 5 Ves. 737. 2. Such a contract, with the performance had or secured, constitutes a full bar to a claim for a distributive share of the personal estate, if its language is broad enough to cover it. 2 Williams on Executors (4th Amer. ed.) 1278. Peachey on Marriage Settlements, 358, 359. *Davila* v. *Davila,* 2 Vern. 724. *Gurly* v. *Gurly,* 8 Cl. & Fin. 743. *Buckinghamshire* v. *Drury,* 2 Eden, 60. *Dyke* v. *Rendall,* 2 De G. Macn. & Gord. 209. *Vincent* v. *Spooner, ubi supra.* 3. The language of the agreement is clearly broad enough to cover and bar the present claim.

HOAR, J. It seems to be well settled that an ante-nuptial contract, which is not to be performed during the coverture, is not discharged by the marriage of the parties to it, even at law. *Milbourn* v. *Ewart,* 5 T. R. 381. *Gibson* v. *Gibson,* 15 Mass. 111. *Miller* v. *Goodwin,* 8 Gray, 543.

We can have no doubt that, fairly construed, the agreement between the petitioner and her husband, made before marriage, was intended not only to bar her claim for dower, but for any distributive share of her husband's estate.

Such an agreement would be no bar to dower at common law, unless the covenants could operate by way of rebutter. *Hastings* v. *Dickinson,* 7 Mass. 153. *Gibson* v. *Gibson,* 15 Mass. 106. Whether it constitutes a bar to dower under the statute, is not now before us for decision. It would undoubtedly have been effectual, if the terms of the contract had been performed.

But as an answer to the claim of the widow to a distributive share of the personal estate, there are difficulties which we think insuperable. If the covenant not to claim any part of the personal estate could be construed as a release, a release of a claim which has no present existence is inoperative. The contract being executory, cannot avail by way of estoppel. It could not be broken, so as to create any cause of action upon it, until after a decree of distribution should have been made.

It was said in *Gibson* v. *Gibson*, that a covenant not to claim dower would be effectual by way of rebutter, to avoid circuity of action, only if there were shown to be no inequality between the value of the dower, and the sum for which the claimant would be answerable in damages for breach of the covenant.

But there is one broad distinction between the right of a married woman to dower, and her right to a distributive share of personal estate. An inchoate right of dower is an incumbrance on land during the life of the husband, which affects his power of disposal; while personal estate is wholly subject to his control. As a question of damages to the husband or his administrator, it might be difficult to define the injury sustained by reason of one person rather than another, becoming entitled to a share of personal estate not given by will. When the contract which we are considering was made, the right of a husband to dispose of his personal estate by will was wholly independent of the wife. The change in the statute law which has given to the wife the right to waive the provisions of her husband's will and, within certain limitations, to take the same share of his estate as if he had died intestate, created a relation to his estate which did not exist at the date of the contract. As he made a will, the case at bar would not have arisen, but for this statute; and the statute has made no provision as to the effect of marriage settlements or contracts.

The right of a person entitled to share in the personalty, under a decree of distribution of an intestate estate, is a peculiar one. It is not a right to any specific property of the intestate. It arises after the estate has been settled, and is not open to any set-off or other defence arising from contracts with the decedent

*Hancock* v. *Hubbard,* 19 Pick. 167.   The powers of the court of probate are for the most part defined and fixed by statutes, and do not extend to a general decision of controverted questions affecting the settlement of estates.   It has no equity powers, except where they are conferred by statute ; and its rules of property and of evidence, with the like exception, are those which govern courts of common law.   *Eveleth* v. *Crouch,* 15 Mass. 307.   *Grinnell* v. *Baxter,* 17 Pick. 383.

It would be impossible to determine in advance, in many cases, who would be interested in the performance of a covenant by a wife to claim no distributive share in her husband's estate, at the time of the death, when the covenant would first become operative.   The husband and wife might be of kin to each other ; and before his death the wife might become his sole heir ; or she might become the representative of those for whose benefit the contract was intended.   Suppose, as an extreme case, that there were no kindred, would such a contract by the wife so far conclude her rights as to enable the Commonwealth to claim by escheat ?   Or suppose an intestate to have bought out the right of all his nearest of kin, according to the statute of distributions, in his lifetime, what decree could be entered in the probate court ?   Could the judge of probate pass over all those whom the statute entitles to a decree of distribution, and look for the next more remote kindred ? or what would become of the estate ?

It is noticeable that not a single case has been cited, in which a contract of this kind has ever been held, at law, to bar the right of the wife.   Yet a large number of cases have been cited in which courts of equity have recognized the validity of the contract, and enforced its performance.   But equity proceeds upon the doctrine of enforcing a specific performance ; in the application of which it is immaterial to whom the legal interest descends, because the contract raises a trust, of which the court can compel the execution.   A court of equity can also determine whether the party seeking to enforce the trust is within the equity of the original contract.   *Neves* v. *Scott,* 9 How. (U. S.) 196

At law, a case somewhat analogous would be that of an agreement among heirs, upon a sufficient consideration, that one or more of them should relinquish his distributive share of an estate ; or an express assignment of the share of one to another, or to a stranger. It would scarcely be suggested that such a contract would alter the power or the duty of the probate court in making a decree of distribution. In the case of *Trull* v. *Eastman*, 3 Met. 123, it was indeed held that a conveyance by one heir to another of his expectant right in his father's estate, made on sufficient consideration, with the father's assent, by deed with covenants of warranty, was effectual to pass the real estate ; the covenant operating by way of rebutter, and being a covenant that runs with the land. But it is obvious that the reasons for that decision would not apply to personalty.

Upon these considerations, the court are of opinion that Mrs Sullings is entitled to a decree in the probate court for the payment of her distributive share in her husband's estate, without reference to the ante-nuptial agreement set forth in the report, and that the remedy of any parties interested in the enforcement of that agreement is in equity.          *Decree reversed.**

---

\* A similar decision was made, and for the same reasons, in the case of ELIZA A. TARBELL *v.* EDMUND TARBELL, which came up in Middlesex, January term 1863. *P. W. Chandler & G. O. Shattuck*, for the petitioner. *W. P Webster*, for the respondent.